Patricia M. COX, a widow, Individually and as Executrix of the Will of Donald G. Cox, Deceased, Appellant,

v.

The NATIONAL LIFE AND ACCIDENT INSURANCE COMPANY, Appellee.

No. 5900.

Court of Civil Appeals of Texas.

El Paso.

Oct. 4, 1967.

Rehearing Denied Nov. 1, 1967.

Doyle Gaither, Wellington Chew, El Paso, for appellant.

Scott, Hulse, Marshall & Feuille, Charles R. Jones, El Paso, for appellee.

## OPINION

CLAYTON, Justice.

This is a suit to recover under an insurance policy issued by appellee, defendant below, on the life of Donald G. Cox, deceased, filed by his widow, appellant Patricia M. Cox, Individually and as Executrix under the Will of the Deceased. Trial was to a jury which found all issues favorably to appellee and on which verdict judgment was rendered for the insurance company. Appellant gave notice of appeal and filed her affidavit in forma pauperis in lieu of cost bond, which was contested by appellee and such contest sustained by the court. The appeal comes to us, however, on the Transcript and an Agreed Statement of Facts.

The appellant presents five points of error. Nos. I and II relate to the court's having overruled her special exception to Paragraph II of appellee's Amended Original Answer in which appellee states that the application for the insurance is a part of the contract of insurance and a condition precedent to the contract of insurance, that the insured was to be in "good health" at the time of the delivery of the policy, which application appellee states was attached to the answer as "Exhibit A". The Agreed Statement of Facts stipulates that appellee was allowed to read this paragraph to the jury, over the exception of appellant, and presented no evidence as to whether the application was attached to the policy at the time of its issuance, nor was it attached to the policy when the policy was intro-

duced by appellant, the only evidence on the point being that of appellant that the policy was in the same condition as when received by her from the Military Police shortly after the death of her husband. Nevertheless, Point of Error No. II relates that appellee was allowed to introduce the application in evidence over appellant's timely objection. The jury found in answer to Special Issue No. 1, that the deceased was not in sound health on October 5, 1964, the date the policy was issued, and, in answer to Special Issue No. 2, that the deceased answered "No" in the application, that he had not consulted or been treated by a doctor, other practitioner, or dispensary or clinic within the past five years. Also, in answer to Special Issues Nos. 3 through 8, that he answered "No", as to whether or not he had been treated for high blood pressure; that these answers to Special Issues 2 and 3 were false; they were given for the purpose of inducing the insurance company to issue the policy; they were relied upon by the company, which would not have issued the policy had the true physical condition of applicant been known to it; and that no money was due to compensate appellant's attorney for services rendered appellant. Appellant claims that these jury findings were influenced by introduction of the application.

As to the introduction of the application for insurance, the stipulated Statement of Facts provides:

"V.

"There was sufficient evidence of probative weight and value to support the jury's finding to Special Issue No. 1 as contained in the Court's charge and the Judgment of the Court to the effect that the deceased, Donald G. Cox, was not of sound health at the time of the issuance of the insurance in question and such evidence was wholly unrelated to the application or any extrinsic evidence relating to that application. Prior medical records of the deceased, Donald G. Cox, from William Beaumont Hospital, covering a period of time of one year prior to the death of the decedent, Donald G. Cox, was properly introduced into evidence and the defense witness, Dr. Ralph Homan read and interpreted such medical and hospital reports on the witness stand and testified that the condition reflected by those reports and records was a serious physical condition known as high blood pressure; which was in its advanced stages; and which, in the doctor's opinion, was of a substantial nature and materially affected the general healthfulness and soundness of the deceased. In the doctor's opinion, the deceased, Donald G. Cox, was not in good health or in sound health at the time the policy was issued. The doctor further testified that the condition was an increasing abnormality which had become substantially worse within a few months prior to the issuance of the contract of insurance in question and which would continue to be an abnormality. The condition was not known by the insurer at the time of or prior to the issuance of the policy of insurance in question.

"Defense witnesses Dr. Ralph Homan, C. H. Bar and the Plaintiff's witness, Mr. Merance, testified to facts which establish that the condition of the decedent, Donald G. Cox, prior to the issuance of the contract of insurance in question, substantially increased the risk to be assumed by the insurer.

"Pursuant to the evidence introduced in this case, the jury could have believed and answered Question No. 1 in the Court's charge as they did, upon a preponderance of the evidence in this case, without consideration of any evidence relating to the application or the application itself.

"The policy of insurance in question was introduced into evidence in this case by the Plaintiff and contained, among other things, a provision to the effect that the life to be insured had to be

sound health on the date of the issuance of the contract of insurance or, otherwise, the contract of insurance would be void and of no force and effect."

As to the law on the matter of introduction of the application for insurance, appellant cites us to Article 21.24, V.A.T.R. C.S., Insurance Code, providing:

"Every policy of insurance issued or delivered within this State by any life insurance company doing business within this State shall contain the entire contract between the parties, and the application therefor may be made a part thereof. Acts 1951, 52nd Leg., ch. 491."

and to National Life & Accident Ins. Co. v. Love, 282 S.W. 829 (Tex.Civ.App., 1926; wr.dism.) in which the appeals court says:

" * * * Neither the application for said policy nor any of the questions asked and answers given thereto in reference to her physical condition were indorsed upon said policy or attached thereto, as required by statute, and, this being true, neither of said instruments was any part of the insurance contract, and neither was admissible for any purpose." (Citing cases).

Also, Harris v. Allstate Insurance Company, 249 S.W.2d 669, 671 (Tex.Civ.App., 1952; ref.), reciting:

"No written, photographic or printed copy of the application, nor a copy of the questions asked and answers given thereto, were attached to the policy, and, therefore could form no part of the insurance policy and was not admissible in evidence." (Citing cases). "Notwithstanding the admission of the application in evidence and the submission of several issues in the charge based upon the application, the trial court in its judgment states: 'the court having fully considered such verdict of the jury is of the opinion and finds that Special Issues Nos. 3, 6, 8 and 9 and the answers of the jury thereto are irrelevant and immaterial in

that the written application inquired about in said issues was not attached to and made a part of said policy of insurance and by reason thereof the false and fraudulent statements contained in said application cannot be relied upon by the defendant to avoid such policy.' The above portion of the judgment shows that the trial court disregarded the issues in the charge and the answers thereto, based upon the application for the insurance and is tantamount to striking all the evidences in reference to the application admitted over appellants' objection. This action in our opinion renders harmless the error in admitting the application in evidence. The above points are overruled."

Appellee admits that the evidence failed to establish that the application was attached to the insurance policy at the time of the issuance of the policy or at the time of the trial, but asserts that the application contained misrepresentations of material facts on which it relied in issuing the policy, as shown by the application itself and extrinsic evidence, and thus the application became admissible, not as evidence of the contractual terms but of the fraud. Appellee relies upon the Commission of Appeals, approved opinion, in First Texas Prudential Ins. Co. v. Pedigo, 50 S.W.2d 1091, 1092 (1932), holding:

" * * * These two statutes, as originally passed in the year 1909, constituted a part of the same act. Construing these statutes together, it appears that the legislature intended to require that the written instrument issued to the insured contain all the terms of the contract between the parties, whether such written instrument be made up of the policy alone, or of the policy and the application. The statutes clearly imply a denial of any contractual force to the provisions of the application, unless the application, or a copy thereof, actually accompany the policy as a part of it. This, of course, comprehends all purported warranties

which the application contains. A representation, however, which is made by the insured to the insurer, and upon which the latter relies in entering into the contract, is not contractual but is collateral to the contract. It simply induces the contract. 32 C.J. 1273; 2 Cooley's Briefs on Insurance, 1128. Nothing is found in the language of these statutes to justify the conclusion that the Legislature intended to render unavailable to the insurer, as a basis for defense, any false representation contained in the application, unless the application accompany the policy as a part of it."

\*     \*     \*     \*     \*     \*

" \* \* \* Article 5045 of the statute provides that: 'No recovery upon any life, accident or health insurance policy shall ever be defeated because of any misrepresentation in the application which is of an immaterial fact and which does not affect the risks assumed.' This implies that a recovery on a life policy can be defeated because of a misrepresentation contained in the application, which is material and affects the risks assumed."

■ Furthermore, the policy itself provides: "This policy shall take effect on the Date of Issue, provided the Insured is then alive and in sound health, but not otherwise." In the Agreed Statement of Facts, Dr. Ralph Homan testified that in his opinion the deceased "was not in good health or in sound health at the time the policy was issued" and this was asserted by appellee as an additional ground of defense to the liability under the policy. Lincoln Income Life Insurance Company v. Mayberry, 162 Tex. 492, 347 S.W.2d 598, 599 (1961); American Nat. Ins. Co. v. Lawson, 133 Tex. 146, 127 S.W.2d 294 (Tex.Com. App. adopted opinion 1939). Based on these authorities and the Agreed Statement of Facts, we feel no fundamental error was committed by the court in overruling the Special Exception of appellant or admitting

the application in evidence, and Points of Error Nos. I and II are overruled.

■ Point of Error No. III charges error in granting appellee's special exception to paragraph IV of appellant's original petition. Appellee calls to our attention that this ground of error is not specified in the appellant's Motion for New Trial in accordance with Rule 320 (also Rule 374), Texas Rules of Civil Procedure, and thus cannot be considered here. We believe this to be true after careful examination of the record, and on authority of Missouri Pacific Railroad Co. v. Ramirez, 326 S.W.2d 50, 56 (Tex.Civ.App., 1959; ref., n.r.e.). We therefore overrule Point of Error No. III.

■ Point of Error No. IV relates to the refusal of the trial court to submit the appellant's requested special issue, which was a requested definition of "sound health". A definition of sound health is contained in the Texas Supreme Court case of Great American Reserve Insurance Co. v. Britton, 406 S.W.2d 901, 905 (1966), in which Chief Justice Calvert states:

"An insurance policy requirement that an applicant for insurance be in 'good health' does not mean 'perfect health.' If it did, all policies could be canceled within the contestable period. It is for this reason that the courts have evolved certain standards for measuring 'good health.' The term is usually defined as a state of health free from any disease or bodily infirmity of a *substantial* nature which affects the general soundness and healthfulness of the system *seriously* or *materially* increases the risk to be assumed by the insurer." (Citing cases).

The trial court substantially tracks this language in the definition given, and we overrule this Point of Error No. IV.

■ In Point of Error No. V appellant complains of the refusal by the court to grant appellant's pauper's oath filed under Rule 355, T.R.C.P. This request to submit

an affidavit in lieu of cost bond for appeal was contested by appellee and refused by the court. In the event of a contest the allegations in the affidavit must be proved by the applicant, appellant here, (King v. Payne, 156 Tex. 105, 292 S.W.2d 331, 1956), showing an inability to pay costs or obtain security therefor. This the appellant did not prove, but in any event she finally obtained a surety bond signed by her attorneys on leave of the court. We feel we must overrule Point of Error No. V.

Having considered and disposed of all of appellant's points of error and finding no error, the judgment of the trial court is in all things affirmed.